William R. KELLEY et al.,
Appellants-Respondents,

v.

CITY OF ST. PAUL et al.,
Respondents-Appellants.

Nos. 49038, 49080.

Supreme Court of Minnesota.

Oct. 19, 1979.

D. D. Wozniak, St. Paul, for appellants in No. 49080 and respondents in No. 49038.

Suzanne E. Flinsch, City Atty., and Edward P. Starr, Asst. City Atty., St. Paul, for respondents in No. 49080 and appellants in No. 49038.

YETKA, Justice.

After the automobile of William and Joan Kelley was struck by a snowplow owned by the City of St. Paul, they brought suit against the city and the snowplow driver, Jerome E. Hughes. Following a special jury verdict, the Ramsey County District

Court entered judgment for the plaintiffs for the limit of Minn.Stat. ch. 466 against the city and Hughes jointly and against Hughes individually for the excess. Both sides appealed, raising issues involving the application of the municipal tort liability statute. We affirm in part, reverse in part and remand for the entry of a new judgment.

The issues raised in this appeal are:

I. May a municipal employee be held liable for a tort judgment in excess of the statutory limit on municipal tort liability?

II. May a municipality voluntarily indemnify an employee for such a judgment?

III. Did the City of St. Paul decide to indemnify the defendant Jerome E. Hughes for such a judgment?

IV. Is a spouse's claim for loss of services or support separate from or included with the victim's claim for the purposes of the statutory limits on municipal tort liability?

V. Are the statutory limits on municipal tort liability constitutional?

VI. Did the trial court err in ruling that the plaintiff William R. Kelley was not contributorily negligent as a matter of law?

On December 24, 1973, the plaintiffs, William and Joan Kelley, were proceeding in their car southerly on Dale Street in St. Paul. It was still daylight and visibility was clear, but it was snowing and the streets were slippery. Dale Street was 4 lanes wide, and there were no cars parked nearby. Due to street conditions, the plaintiffs' car was straddling the two lanes on their side, and there were cars in front of and behind it following the same track.

The defendant Jerome E. Hughes was driving a city snowplow and sanding truck. He had been sanding only, with the plow in a raised position. The truck was in good mechanical condition. Hughes proceeded northerly on Dale, returning to the garage with an empty truck. Hughes later stated that the truck was unsafe for sudden stops because of the heavy plow in front and no weight in back. William Kelley had seen the snowplow at a distance, but paid no more attention to it.

Hughes was following a car at 1 to 1½ car lengths. As the car braked to turn into an alley, it went into a skid. Hughes either turned to avoid the car or simply braked and veered outward. The truck crossed the center of the street, and the blade struck the plaintiffs' car on the left side. All of this occurred suddenly. Hughes admitted that the accident was his fault, both at the scene and at trial.

After this lawsuit was filed, the City Council of St. Paul passed a resolution, reprinted *infra*, authorizing the city to defend and indemnify Hughes. The city attorney subsequently appeared on behalf of Hughes as well as the city.

At the close of the evidence, the trial court ruled that the plaintiff William Kelley was not negligent as a matter of law and so instructed the jury. The jury, by special verdict, found that the defendants' negligence was the proximate cause of the accident. The jury awarded William Kelley $170,000 for injuries, property damage, and medical expenses paid for his wife. It awarded Joan Kelley $20,000, consisting of $5,000 for her own injuries and $15,000 for the loss of the services and companionship of her husband.

The trial court entered judgment for William Kelley for $50,000[1] against the city and Hughes jointly and for $120,000 against Hughes individually. Judgment for Joan Kelley for $20,000 was entered against the city and Hughes jointly as well. Subsequently, the court raised William Kelley's judgment against the city and Hughes jointly to $100,000[2] and reduced the individual judgment against Hughes to $70,000.

The plaintiffs and defendants all appealed from the trial court's order of May 18, 1979, denying their motions for amended findings and conclusions. The defendants also appealed from the same order denying

---

1. Per Minn.Stat. § 466.04, subd. 1 (1971), discussed *infra*.

2. Per Minn.Stat. § 466.04, subd. 1 (1978), discussed *infra*.

their motion for judgment notwithstanding the verdict or for a new trial. The appeals were all filed within the time required by Rule 104.01, Minn.R.Civ.App.P.

Plaintiffs argued that the city should be liable for the entire amount of the verdict. The defendants argued that the trial court erred in failing to submit the question of Kelley's negligence to the jury and asked for a finding that any judgment in favor of Kelley cannot exceed the statutory limits and that any judgment in favor of Joan Kelley should be limited to pain and suffering only and that her claim for loss of services and companionship of her husband should be included in her husband's judgment.

The parties have argued at great length as to whether the city council resolution agreeing to defend its employee and to pay any judgment is in the nature of an indemnity right in the plaintiffs. The trial judge also discussed the question of indemnity in his memorandum accompanying his decision on post-trial motions. The city, at oral argument, maintained that in order for plaintiffs to collect any excess judgment over and above the statutory limits, a second lawsuit for indemnity would have to be brought. We disagree that the issues raised in this case are as difficult as the parties make them out to be. No constitutional issue need be decided because the case can be decided on statutory grounds and on its facts.

In *Spanel v. Moundsview School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962), this court decided to abrogate sovereign immunity for municipalities if the legislature did not act to do so. Chapter 466 of the Minnesota Statutes was enacted at the next legislative session as a result. At the time of this accident, Minn.Stat. § 466.04,

subd. 1 (1971) provided a limit on municipal liability for torts of $50,000 per claimant. In 1976, after the accident, but before trial, the statute was amended to allow $100,000 per claimant. 1976 Minn.Laws, ch. 264.

By motion after trial, the city sought to limit its liability to $50,000. The trial court held the $100,000 limit applicable since the liability of the city in indemnifying Hughes did not arise until after he was found liable at trial.[3] The city apparently does not contest use of the $100,000 limit, and it did not brief the issue.[4]

The defendants did claim that the plaintiffs cannot recover the excess over the limit from the employee. Under Minn.Stat. § 466.07 (1978), the governing body of any municipality may defend, save harmless, and indemnify any of its officers and employees; whether elective or appointive, against any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of their duty.

Following the bringing of this lawsuit, but before trial, the City Council of St. Paul adopted the following resolution:

Council File No. 264858

CITY OF SAINT PAUL

Council Resolution

Presented By Ruby Hunt

RESOLVED, that the City Attorney be and hereby is authorized and directed to assume the defense of Jerome E. Hughes in the matter of "William R. Kelley and Joan O. Kelley v. City of Saint Paul and Jerome E. Hughes" and the proper city officers are hereby authorized to pay on behalf of Jerome E. Hughes any judgments entered against him or settlements negotiated in his behalf involving the above lawsuit, said lawsuit arising out of

---

3. *See Dixon v. Northwestern Nat'l Bank of Mpls.*, 275 F.Supp. 582 (D.Minn.1967); *Aetna Cas. & Sur. Co. v. Bros*, 226 Minn. 466, 33 N.W.2d 46 (1948); *Christy v. Menasha Corp.*, 297 Minn. 334, 211 N.W.2d 773 (1973).

4. Were it not for the question of when liability on indemnity arises, the $50,000 limit might well apply. *See Muckler v. Buchl*, 276 Minn.

490, 150 N.W.2d 689 (1967); *Zontelli Bros. v. Northern Pac. Ry. Co.*, 263 F.2d 194 (8th Cir. 1959) (wrongful death limit at time of death applies, though later raised). Since the city does not contest use of the higher limit, and in view of our holding that the city is liable without regard to the limits, we need not decide which limit governs.

an accident on December 24, 1973 whereby Jerome E. Hughes was acting within the course and scope of his employment with the City of St. Paul.

COUNCILMEN: Christensen, Hozza, Levine, Roedler, Sylvester, Tedesco, President Hunt. 7 in Favor, 0 Against.

Adopted by Council: Date Jan. 9, 1975.

Certified Passed by Council Secretary, by Rose Mix.

Approved by Mayor: Date Jan. 10, 1975, By Lawrence Cohen.

Form Approved by City Attorney By Daniel L. Ficker.

■ Thus, by resolution, the council made it clear that it intended to pay on behalf of Jerome Hughes any judgments entered against him.[5]

■ The 1976 amendments to section 466.04 added the following subdivisions:

Subd. 1a. *Officers and employees.* The liability of an officer or an employee of any municipality for a tort * * * shall not exceed the limits set forth in subdivision 1 * * *.

Subd. 1b. *Total Claim.* The total liability of the municipality on a claim against it and against its officers or employees arising out of a single occurrence shall not exceed the limits set forth in subdivision 1.

We need not decide whether this amendment would apply to a claim arising in 1973 since section 466.07, both before and after the amendment, allows a municipality to voluntarily indemnify an employee for greater than the limits of section 466.04.[6] In this case, the city clearly decided to indemnify Hughes without any limit.[7]

Furthermore, we see no reason why third parties such as the plaintiffs are not enti-

tled to rely upon the city's action, foreclosing the necessity of bringing a separate action to enforce it. We hold therefore that the plaintiffs may enter judgment directly against Hughes and the City of St. Paul jointly for the entire amount of the damages found by the jury verdict.

In light of this result, we do not deem it necessary to decide the constitutional issue regarding the statutory limits on municipal tort liability. The question as to whether a spouse's claim for loss of services or support must be included in her husband's claim under Minn.Stat. § 466.04, subd. 2 (1978) is also moot inasmuch as the City of St. Paul is liable for the entire amount of the verdicts rendered in favor of both plaintiffs regardless of to whom the claim is allocated.

■ We also hold that the decision not to submit the issue of William R. Kelley's contributory negligence to the jury is adequately supported in the record. Under the facts of this case, it is clear that the accident was not caused by any negligence on the part of William R. Kelley.

Affirmed in part, reversed in part, and remanded for the entry of judgment against both the city and its employee.

OTIS, J., took no part in the consideration or decision of this case.

---

5. In *Douglas v. City of Minneapolis,* 304 Minn. 259, 230 N.W.2d 577 (1975), it was noted that Minn.Stat. § 471.45 (1978) requires a municipality to determine that payment of a judgment is "fitting and proper." Such a finding is not required in order to indemnify an employee pursuant to Minn.Stat. § 466.07 (1978).

6. Minn.Stat. § 466.06 (1978) authorizes a municipality to obtain insurance for such liability above the limits of section 466.04 (1978).

7. If there had been a limit to the city's indemnification, it would have had the obligation to disclose that fact to its employee and to allow the employee to obtain independent counsel. *See* 7A J. Appleman, *Insurance Law and Practice* § 4681, p. 426 (1962).