Plaintiffs, State of Alabama, Teachers' Retirement System of Alabama (TRS), and others, filed suit against defendant, Trust Company Bank, a Georgia chartered state bank, for breach of statutory warranty under § 7-4-207, Code 1975.[1] The gravamen *Page 12 
of the complaint alleged that between February 1972 and August 1980, plaintiff, State of Alabama, issued warrants on the Alabama state treasury for retirement benefits to Jacob T. Williams, a retired teacher who died 7 January 1971. The warrants were sent through the United States mail to the payee in Gadsden, Alabama, at the address printed on the warrants. Defendant, as a collecting bank, from time to time, presented to the Treasurer of the State of Alabama for payment certain of those warrants drawn on the Teachers' Retirement System Funds on deposit with the State Treasurer and received payment for them in spite of the fact they bore forged endorsements of the payee, in breach of the warranty provided by § 7-4-207.
In its answer, the Bank admitted the breach, but denied liability on the basis of one of several affirmative defenses: (1) those warrants presented and paid more than six years next before the filing of this action were barred by the statute of limitations; (2) plaintiffs failed to make a claim for breach of warranty within a reasonable time after they learned or should have learned of the breach; and (3) plaintiffs are barred from asserting the forgery because they were guilty of negligence substantially contributing to the making of the forged endorsements.
Upon completion of discovery, both plaintiffs and defendant filed motions for summary judgment supported by the pleadings and their respective affidavits. By order dated 28 September 1981, as amended 8 October 1981, the trial court granted plaintiffs' motion for summary judgment and entered judgment in their behalf for the sum of $28,115.24 plus interest and denied the Bank's motion for summary judgment. This appeal by the Bank is from the 8 October 1981 order.
The facts on which the trial court based its order are as follows: Jacob T. Williams, a teacher and principal in the Gadsden city school system, became a member of TRS on 25 January 1941, and continued a member thereof until his death. He retired on disability in December of 1968, at which time TRS began sending monthly retirement warrants payable to him to 804 North Eighth Street, Gadsden. Although he died on 7 January 1971, the retirement system was not notified of his death and continued to send his retirement benefits to his home address noted above.
Beginning in November of 1973, Lewis Williams, a resident of Atlanta and the son of Jacob T. Williams, deposited these warrants into his, Lewis's, account with defendant Bank in Atlanta, after first forging the endorsement of his deceased father. Lewis continued this practice monthly until 31 December 1979, by which time TRS warrants totalling $28,115.24 had been deposited into his account.
The single interruption in this monthly deposit of warrants was in April of 1974. The warrant sent at that time, addressed to "Jacob T. Williams, 804 North Eighth Street, Gadsden, Alabama 35901", was returned to TRS with the post-office stamp "undeliverable as addressed." On 8 May 1974, M.E. Thomas, TRS Retirement Executive, sent a letter to Jacob Williams at the same address, requesting that he "please acknowledge receipt of this letter by sending us your correct address." TRS received no response to that letter and, on 20 May 1974, TRS sent a similar letter to Dorothy Williams, Jacob Williams's wife and death beneficiary, at the same address, requesting that she send TRS Williams's correct address. Unknown to TRS, Mrs. Williams had died in April of 1973. On 6 June 1974, TRS *Page 13 
received an undated and unsigned typewritten letter from "J.T. Williams", providing a new address as requested. Acting upon this letter, TRS changed Jacob Williams's address on its records and continued mailing the monthly warrants.
On or about 1 October 1980, a U.S. Postal Service Inspector at Gadsden contacted the superintendent of schools there and informed him the retirement benefit checks were being mailed and delivered to a person whom the post office suspected was deceased: Jacob T. Williams. The superintendent confirmed Mr. Williams's death and immediately notified the Teachers' Retirement System in Montgomery. TRS turned the matter over to the Alabama Bureau of Investigation and notified the State Treasurer of the forgeries. Following an indictment of Lewis Williams, the State Treasurer made a demand upon the Bank for repayment of the warrants. The Bank refused to do so. As a result, plaintiffs filed this suit.
Appellant Bank's first assignment of error is that the trial court erred in failing to grant its motion for summary judgment based on the assertion of the statute of limitations as a bar to recovery for warrants paid prior to 6 March 1975, more than six years before this action was filed. The Bank's contention is that TRS cannot recover for the warrants paid prior to 6 March 1975 because, as a matter of law, any recovery is barred by § 6-2-34, Code 1975, which provides: "The following must be commenced within six years: (9) Actions upon any simple contract or specialty not specifically enumerated in this section." We agree and reverse as to that question.
The Alabama Uniform Commercial Code (Alabama's codification of its version of the Uniform Commercial Code) does not have an express statute of limitations governing actions for breach of warranty; the general statute of limitations governing action on contracts controls. See, Winkie v. Heritage Bank ofWhitefish Bay, 99 Wis.2d 616, 299 N.W.2d 829 (1981); LewittesFurniture v. Peoples Nat'l Bank of Long Island, 82 Misc.2d 1013,372 N.Y.S.2d 830 (1975); 2 Bender's, Uniform CommercialCode, § 10.05 (1982). The present rule is in accord with pre-code cases that still reflect the correct rule of law. See also, Houston v. Lawhead, 116 W. Va. 652, 182 S.E. 780 (1935);Home Ins. Co. v. Mercantile Trust Co., 219 Mo.App. 645,284 S.W. 834 (1926). A warranty of good title under § 7-4-207 is an implied contractual warranty of the genuineness of the endorsement. The contract being implied rather than under seal, § 6-2-34, Code 1975, is controlling. Consistent with this view is Spragins v. McCaleb, 237 Ala. 658, 188 So. 251 (1939). The period of limitation governing this cause of action begins to run from the time of the wrongful payment, not from the time of the discovery of the breach. Birmingham Trust Nat'l Bank v.Central Bank and Trust, 49 Ala. App. 630, 275 So.2d 148, cert.den., 290 Ala. 372, 275 So.2d 153 (1973).
The plaintiffs contend that: (1) the sole limitation upon actions for breach of warranty is § 7-4-207 (4), providing that an action for breach of warranty must be brought within a reasonable time after learning of the breach, and (2) if the six-year statute is applicable, it is tolled by the fraud of the forger until discovery of that fraud. We find both of these contentions erroneous. First, § 7-4-207 is a separate limitation in the nature of laches or estoppel, quite different from the ordinary statute of limitations. Second, plaintiffs' cause of action is against the Bank for breach of warranty, not fraud. The applicable fraud statute, § 6-2-3, Code 1975, applies only in case of defendant's fraud. In this case, we do not find any evidence that the Bank committed fraud in connection with its breach of warranty.
Appellant's second and third assignments of error are that the trial court erred in finding there was no genuine issue as to any material fact and that plaintiffs were entitled to judgment as a matter of law. The Bank contends there is evidence that TRS failed to make a claim for breach of warranty within a reasonable time after it knew or should have known of the breach, and, therefore, that under § 7-4-207 (4), *Page 14 
Code 1975, the Bank is discharged from liability. It further contends there is evidence that TRS was negligent in issuing warrants after it knew or should have known of Jacob T. Williams's death. Accordingly, it concludes that § 7-3-406, Code 1975, precludes recovery by TRS from the Bank.
We need not address the issue of negligence or whether the claim for breach of warranty was made within a reasonable time, because a thorough review of the record indicates there are triable issues of fact with respect to appellant's contentions. In light of this, we conclude that summary judgment was inappropriate. The law in Alabama is clear, and there is little need for citation of authority for the rule, that summary judgment is only proper where it is clear what the truth is; there must not be a genuine issue as to any material fact. Rule 56, A.R.Civ.P. It is the burden of the moving party to clearly show that the other party cannot recover under any discernable set of circumstances; if there is any evidence of substance worthy of consideration supporting the position of the nonmoving party, summary judgment may not properly be entered.Oliver v. Taylor, 394 So.2d 945 (Ala. 1981). Consequently, in determining the existence of a genuine issue of material fact, the record on motion for summary judgment must be viewed by this court in a light most favorable to the nonmoving party.Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981).
For the reasons stated, this case is remanded to the trial court for trial on its merits except as to those claims involving the warrants presented, and paid, more than six years next before the filing of this action. Further, judgment as to those warrants should be entered in favor of the Trust Company Bank by the trial court upon the receipt of certificate of judgment.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.
[1] "§ 7-4-207. Warranties of customer and collecting bank on transfer or presentment of items; time for claims.
 "(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that:
 "(a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and
 "(b) He has no knowledge that the signature of the maker or drawer is unauthorized, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith:
 "(i) To a maker with respect to the maker's own signature; or
 "(ii) To a drawer with respect to the drawer's own signature, whether or not the drawer is also the drawee; or
 "(iii) To an acceptor of an item if the holder in due course took the item after the acceptance or obtained the acceptance without knowledge that the drawer's signature was unauthorized; and
 "(c) The item has not been materially altered, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith:
"(i) To the maker of a note; or
 "(ii) To the drawer of a draft whether or not the drawer is also the drawee; or
 "(iii) To the acceptor of an item with respect to an alteration made prior to the acceptance if the holder in due course took the item after the acceptance, even though the acceptance provided `payable as originally drawn' or equivalent terms; or
 "(iv) To the acceptor of an item with respect to an alteration made after the acceptance.
 "(2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that:
 "(a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and
"(b) All signatures are genuine or authorized; and
"(c) The item has not been materially altered; and
"(d) No defense of any party is good against him; and
 "(e) He has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted item.
 "In addition each customer and collecting bank so transferring an item and receiving a settlement or other consideration engages that upon dishonor and any necessary notice of dishonor and protest he will take up the item.
 "(3) The warranties and the engagement to honor set forth in subsections (1) and (2) arise notwithstanding the absence of indorsement or words of guaranty or warranty in the transfer or presentment and a collecting bank remains liable for their breach despite remittance to its transferor. Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any.
 "(4) Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim. (Acts 1965, No. 549, p. 811.)"