E.S.P., INC., Respondent,

v.

MIDWAY NATIONAL BANK OF ST. PAUL, defendant and third-party plaintiff, Appellant,

v.

FIRST BANK ROBBINSDALE, third-party defendant, Respondent.

No. C5–88–1940.

Court of Appeals of Minnesota.

March 14, 1989.
Review Granted April 24, 1989.

Robert G. Share, Briggs and Morgan, Minneapolis, for E.S.P., Inc.

Robert W. Murnane, Paul B. Kilgore, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for Midway Nat. Bank of St. Paul.

John C. Thomas, A. Reid Shaw, Teresa J. Rasmussen, Oppenheimer Wolff & Donnelly, Minneapolis, for First Bank Robbinsdale.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and STONE,* JJ.

## OPINION

FOLEY, Judge.

This appeal is from a summary judgment granted to respondents E.S.P., Inc. and First Bank Robbinsdale on the basis that appellant Midway National Bank of St. Paul's breach of warranty claim under the Uniform Commercial Code, Minn.Stat. § 336.4–207 (1986) was barred by the statute of limitations found in Minn.Stat. § 541.05 (1986). We affirm.

## FACTS

On February 3, 1981, Barr and Nelson, Inc. issued a check payable to Mechanical Constructors, Inc. and E.S.P. The check was drawn on Barr and Nelson's bank account at Midway. The check was delivered by Barr and Nelson to Mechanical Constructors, which endorsed the check and deposited it into its account at First Bank on February 3, 1981. On or about February 6, 1981, First Bank received payment from Midway.

On February 25, 1985, Midway received a letter from E.S.P. containing an affidavit of forgery signed by Donald Parr, the vice-president of E.S.P., and dated February 22, 1985. Parr stated in the affidavit that the endorsement allegedly made on behalf of E.S.P. was not written or authorized by E.S.P. but was a forgery, and that E.S.P., having received no proceeds from the check, was entitled to payment of $17,600. Midway notified First Bank on April 1, 1985 of the affidavit of forgery and requested First Bank pay Midway $17,600.

On January 30, 1987, E.S.P. brought an action against Midway to recover $17,600, alleging that Midway was liable in conversion. On February 12, 1987, Midway brought suit against First Bank claiming breach of warranty pursuant to Minn.Stat. § 336.4–207 and seeking indemnity in the

pointment pursuant to Minn. Const. art. 6, § 2.

amount of $17,600. Service was accomplished on First Bank on February 13, 1987, more than six years after the check was paid. First Bank responded to the complaint by affirmatively asserting the statute of limitations defense.

In June 1987, Midway moved for summary judgment against First Bank. In September 1987, First Bank cross-moved for summary judgment on the basis that Midway's claim was barred by Minn.Stat. § 541.05. On December 1, 1987 the trial court denied Midway's motion, and granted First Bank's motion for summary judgment.

## ISSUE

Did the trial court err in granting summary judgment?

## ANALYSIS

When reviewing an order granting summary judgment, this court must determine whether there are any genuine issues of material fact, and whether the trial court erred in its application of the law. *L & H Transport, Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 227 (Minn.1987) (citing *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979)). Where questions of law are raised, this court is free to conduct an independent review of the law. *Service Oil, Inc. v. Triplett*, 419 N.W.2d 502, 503 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. April 20, 1988). Here, the parties stipulated that there are no issues of fact in dispute and only the interpretation of law is involved.

 This issue presents a case of first impression in Minnesota. The Uniform Commercial Code, as adopted in Minnesota, does not contain a specific statute of limitations governing actions for breach of warranty.

The trial court held that in the absence of an express statute of limitations in the Uniform Commercial Code an action

is controlled by Minn.Stat. § 541.05, subd. (1), 1 (1986) which provides: "... except where the Uniform Commercial Code otherwise prescribes, general con-

tract actions shall be commenced within six years."

After deciding that Minn.Stat. § 541.05 applied to these facts, the trial court discussed when the statute of limitations begins to run. The trial court relied on *Trust Co. Bank v. State*, 420 So.2d 10, 13 (Ala. 1982), and concluded that the statute of limitations begins to run from the *time of payment.* In *Trust Co. Bank*, the Alabama Supreme Court discussed whether the statute of limitations begins to run *at the time of wrongful payment*, or *upon discovery of breach of warranty* under Ala.Code § 7-4-207, which is identical to Minn.Stat. § 336.4-207.

In *Trust Co. Bank*, the Alabama Teacher's Retirement System brought an action against Trust Company Bank alleging breach of warranty under Ala.Code § 7-4-207. Trust Company Bank affirmatively asserted that part of the claim was barred by the statute of limitations. There, Alabama had continued to issue disability retirement payments to a teacher who was deceased. The deceased teacher's son forged his late father's endorsement on the checks and deposited the funds in his bank account.

There, as here, both parties brought motions for summary judgment. The Alabama Supreme Court held that since breach of warranty is in the nature of an implied contract action

the period of limitation * * * begins to run from *the time of the wrongful payment, not from the time of the discovery of the breach.*

*Id.* (emphasis added).

Here, the trial court stated: "According to several commentators this decision is correct and in line with the Uniform Commercial Code." The trial court cited B. Clark, *The Law of Bank Deposits, Collections and Credit Cards*, 6-48 (1987); H. Brady, *Brady on Bank Checks*, § 23-24 (1987); and W. Hawkland, F. Leary & R. Alderman, *Uniform Commercial Code Series*, § 4-207:09 (1984). Writing on the subject, Hawkland, Leary & Alderman stated:

The Code does not specify which statute of limitations is applicable to warranty actions under section 4–207. The limitation period for breach of warranty of a written contract, however, should be employed.[1]

---

[1] See, e.g., *Trust Co. Bank v. State of Alabama,* 34 UCC Rep Serv 627, 420 So2d 10 (Ala 1982).

Hawkland, Leary & Alderman, *Uniform Commercial Code Series* § 4–297:19.

We hold with the proposition in *Uniform Commercial Code Series* and the decision of the Alabama Supreme Court in *Trust Co. Bank* and adopt the reasoning of the Alabama Supreme Court.

Midway's cause of action arises as a breach of warranty under the U.C.C. and is in the nature of an implied contract action. Accordingly, since Midway paid the check on February 6, 1981, under Minn.Stat. § 541.05, it had until February 6, 1987 to bring suit against First Bank. It failed to do so, and accordingly, its action against First Bank is barred.

■ Midway argues that its action here against First Bank is an action for *indemnity* seeking payment for all sums for which Midway might be found liable to E.S.P., and that such a claim does not accrue for statute of limitation purposes until the party seeking indemnification has been damaged by paying more than its fair share of an obligation. Midway claims that since it has not yet paid more than its fair share of any obligation it may have to E.S.P., its action is not barred by Minn. Stat. § 541.05.

We disagree. While we recognize that indemnity to reimburse a party for a liability may arise under a contract action as well as a tort action, we rely on *Zontelli & Sons, Inc. v. City of Nashwauk,* 373 N.W. 2d 744 (Minn.1985), where the Minnesota Supreme Court stated:

Indemnity usually requires that one party reimburse another entirely for its liability. Indemnity is, however, an equitable doctrine that does not lend itself to hard-and-fast rules, and its application

depends upon the particular facts of each case.

*Id.* at 755 (citations omitted).

Here, we find no facts to justify invoking the equitable doctrine of indemnification. The particular facts of this case reveal that Midway's cause of action fits squarely under the breach of warranty section of the Uniform Commercial Code and is ultimately governed by the provisions of Minn.Stat. § 541.05.

■ Finally, while Midway concedes that this court need not determine the constitutionality of Minn.Stat. § 541.05, it argues that Minn.Stat. § 541.05 as applied to this case, does not comply with due process requirements of Minn. Const. art. I, § 7, and the fifth and fourteenth amendments to the United States Constitution. Midway relies on *Calder v. City of Crystal,* 318 N.W.2d 838, 844 (Minn.1982).

*Calder* is distinguishable on its facts as well as the law. In *Calder,* the supreme court was considering the application, if any, of Minn.Stat. § 541.051 to a third-party action for contribution or indemnification by the city of Crystal where the third-party action was not commenced within the two-year period following the events which gave rise to the action. Crystal argued that its action should not be barred because the limitation statute was not effective until August 1, 1980, and it asserted there would be unconstitutional retroactive application of the statute to bar its claim, particularly in view of the fact that no action against the third parties would vest or mature until its liability was determined.

The supreme court decided the entire issue on equitable grounds, holding that Crystal had a reasonable time (14 months) before August 1, 1980 to bring its action and failed to do so.

Here, Midway could have commenced an action against First Bank for almost two years before it did and can hardly be heard to argue that it was denied an effective remedy by a procedural requirement. The trial court properly applied the limitation statute, Minn.Stat. § 541.05, to bar Midway's claim, and we find no due process violation.

DECISION

AFFIRMED.

BRUCE C. STONE, Judge (concurring specially).

I concur in both the result and the reasoning of the majority opinion but am constrained to add this special concurrence.

The establishment of a statute of limitations is peculiarly the function of the legislature. Here, E.S.P. commenced its action January 30, 1987, seven days before the six-year statute would expire on February 6, 1987. By Supreme Court rule, a defendant has 20 days in which to answer a complaint. Presumably a defendant ought also to have 20 days in which to commence a third-party action. Now, E.S.P. may well recover from Midway, and Midway will be precluded its day in court against First Bank, the first bank to accept the forged endorsement (and the bank which was in the only position to identify the endorser).

A simple amendment to the statute of limitations might well preclude the substantially inequitable result we are compelled to reach in this case.

FORSBERG, Judge (dissenting).

I respectfully dissent. A claim for contribution or indemnity does not accrue until the one entitled to contribution or indemnity is damaged by paying more than their fair share or by paying for the liability of another. *Dixon v. Northwestern National Bank of Minneapolis*, 275 F.Supp. 582, 584 (D.Minn.1967). While the usual application is in tort law, the rule also applies to contract actions. *Aetna Casualty & Surety Co. v. Bros*, 226 Minn. 466, 33 N.W.2d 46 (1948). Midway has not incurred any damage. Requiring Midway to bring suit against First Robbinsdale within six years of payment on the check requires Midway to bring suit before it has suffered a loss. The majority decision requires a bank (in order to preserve its indemnity claim) to bring a declaratory judgment action each time an affidavit of forgery is submitted to the bank even though, ultimately, a suit is not brought claiming forgery, or in fact the document was later proven to be not forged. This is an intolerable burden on banks. E.S.P. has not obtained judgment against Midway and no payment has been made to E.S.P. The statute of limitations on indemnity should not run until a loss is established.